Ramón Llovet Díaz, demandante y apelado, *v.* Junta Examinadora de Ingenieros, Arquitectos y Agrimensores, Etc., demandada y apelante.

No. 4733. *Sometido:* Marzo 15, 1929. *Resuelto:* Febrero 14, 1930.

*Attorney General James R. Beverley* y *Felipe Janer, Sub-Procura-*
*dor,* abogados de la apelante; *Guerra Mondragón & Soldevilla,*
abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata de una apelación interpuesta contra una sentencia dictada en un procedimiento de *mandamus* en que se requería de la Junta Examinadora de Íngenieros, Arquitectos y Agrimensores, de acuerdo con la Ley No. 31 de 1927, que expidiera a Ramón Llovet Díaz una licencia como ingeniero civil.

Parece que con anterioridad al 5 de febrero de 1900 existían ciertas restricciones para el ejercicio de las profesiones arriba enumeradas, pero que en dicha fecha, a virtud de orden militar se abolieron todas las restricciones y se ordenó que en lo sucesivo no se exigieran exámenes, licencias o sistema de registro.

La sección 9 de la Ley No. 31 de 1927, Leyes de ese año, página 187, dispone lo siguiente:

"En cualquier tiempo dentro de los seis meses subsiguientes a la fecha en que esta Ley empiece a regir, la junta expedirá una licencia para el ejercicio de la profesión de ingeniero, arquitecto o agrimensor a cualquier persona que, una vez satisfechos los derechos que más adelante se estipulan:

"(*a*) Haya terminado el curso de ingeniero, arquitecto o agrimensor en una escuela o universidad; o

"(*b*) Haya estado en el ejercicio de la profesión de ingeniero,

arquitecto o agrimensor por no menos de tres años con anterioridad a la fecha de la aprobación de esta Ley.

"A menos que exista prueba en contrario, la junta aceptará como evidencia satisfactoria la declaración jurada, expresada en la solicitud, de que el solicitante ha ejercido la profesión de ingeniero, arquitecto o agrimensor por un período de tres años."

Dentro del período concedido por la ley, el apelado presentó a dicha junta una petición en la cual, después de alegar que había practicado su profesión por un término mucho mayor de tres años, exponía su educación, capacidad y experiencia como tal ingeniero. Inferimos este hecho de una estipulación de las partes sometida a la corte inferior y de la opinión de la corte, ya que la petición original no parece estar transcrita en los autos.

El apelado dice que en otros respectos la prueba sometida a la corte inferior no ha sido elevada a este tribunal. Sin hacer una investigación cuidadosa asumiremos, más bien que resolverla definitivamente, que de las alegaciones y de la estipulación de las partes se desprende que todos los hechos que estuvieren ante la Corte de Distrito de San Juan fueren debidamente elevados a este tribunal. No obstante, considerando la decisión de la corte sentenciadora, debe darse mucho peso a los hechos expuestos en la petición de *mandamus* y a las conclusiones contenidas en la opinión de la corte.

Parece también que desde 1908 el peticionario se ha dedicado en distintas ocasiones a la construcción de carreteras, calles, alcantarillados, hipódromos, ramales ferroviarios, y en la reparación de puentes, que ha hecho mensuras y deslindes, entre ellos, un plano y mensura de la Isla de Mona, y otras materias que han sido resumidas en la opinión de la corte inferior.

La junta se negó a conceder lo solicitado. Se le presentó una moción de reconsideración. Entonces se sometió al peticionario a un examen bajo juramento. Este examen fué sometido a la corte sólo con la certificación del taquígrafo que transcribió el informe.

Convenimos con el apelado en que este examen no fué debidamente elevado a la corte de distrito, toda vez que en nuestro derecho no hay forma alguna conocida a virtud de la cual la declaración *ex parte* de un taquígrafo por sí sola pueda considerarse como prueba admisible (*compctent*). La Corte de Distrito de San Juan, rigiéndose por una opinión anterior del juez Llauger, resolvió el caso a favor del peticionario. Se hizo incapié en las palabras contenidas en la sección 9, *supra*, "A menos que exista prueba en contrario, la junta aceptará como evidencia satisfactoria," etc. La corte resolvió, en efecto, que a menos que existiera tal prueba en contrario la junta tenía el deber ministerial de expedir la licencia. La corte también resolvió que de surgir un deber discrecional, entonces, de acuerdo con los hechos del caso, se había cometido un abuso de discreción.

Indudablemente, a virtud de las palabras "a menos que exista prueba en contrario," la junta está autorizada a celebrar un examen en alguna forma. En otro caso, el No. 4734, *Arán* v. *La Junta Examinadora,* etc., post p. 589, los letrados del apelado dijeron, en efecto, que lo sometido a la junta debe ser "prueba" en alguna forma conocida en derecho, y convenimos en que no basta que en estas condiciones una junta celebre exámenes independientemente de la presencia de un peticionario, según se ha hecho en algunos de los casos que estamos revisando.

Por consiguiente, si no hay tal "prueba" ante la junta, o si no podría considerarse como satisfactoria, surge el deber ministerial de expedir la licencia. *Flourney* v. *City of Jeffersonville,* 79 A.D. 468; *State* v. *Matthews,* 62 S.E. 695.

Creemos que tal deber surgió de la mera declaración de que el peticionario había ejercido su profesión por más de tres años, y en verdad surgió si la declaración del peticionario demostraba que había trabajado como ingeniero, especificando el trabajo en detalle.

Puerto Rico ha exigido que sus ciudadanos paguen contribuciones bajo protesta, teniendo el derecho posterior de entablar un litigio. En forma similar, existen disposiciones que le atan temporalmente las manos a un deudor hipotecario. La ley que tenemos ante nuestra consideración es tal vez un caso en que se le da cierta ventaja a un ciudadano que cumpla con las palabras de la ley.

A tenor de la sección 12 de la citada ley de 1927, la junta tiene facultad para cancelar una licencia obtenida mediante fraude, y el público queda protegido. Si un peticionario presenta una declaración errónea, aunque lo haga honradamente, ello equivaldría en sus efectos a un fraude, suponiendo que el peticionario no sea en realidad un ingeniero. Llegamos a la conclusión de que cuando un peticionario presenta en su petición un caso *prima facie* bueno, no le incumbe reforzar sus declaraciones, en ausencia de prueba en contrario.

Sin embargo, también convenimos con el razonamiento de los jueces de la corte inferior de que suponer que la junta tiene discreción no impediría la expedición de un auto de *mandamus*. Cualquier discreción ejercida por la junta estaba sujeta a ser revisada por *mandamus* de conformidad con los principios enunciados en el caso de *Muñoz* v. *Ramos,* 39 D.P.R. 405, y bajo los hechos de este caso surgiría un abuso de discreción. La mayoría de este tribunal, según se indicó en dicho caso, sostiene, conforme se resolvió en *Tirado* v. *Junta de Retiro,* 38 D.P.R. 1002, que la discreción judicial propiamente dicha no es aplicable a las actuaciones de juntas. A este respecto la mayoría halla sostén en el caso de *Meffert* v. *Packer,* 1 L.R.A. (N. S.) 811, 815. Podemos hacer algunas consideraciones generales sobre la política a seguir al interpretar la ley de 1927.

Según hemos visto, desde el 1900 hasta el 1927 cualquiera podía ser ingeniero sin necesidad de sufrir examen o de obtener licencia. Por tanto, una ley limitando el ejercicio de esa profesión debe proceder cautelosamente para que caiga

dentro del poder de policía. De lo contrario, según sugieren los letrados del apelado en el caso No. 4840, *Flores* v. *La Junta, etc., post* p. 592, la ley podría ser inconstitucional. Creemos que cae muy bien dentro del poder de policía de la Legislatura exigir una práctica de tres años, pero quizás hubiéramos tenido dudas si se hubiese impuesto una carga pesada a una persona que hubiera estado ejerciendo su profesión durante un gran número de años. Creemos que la intención de la Legislatura fué claramente que no debía exigirse una prueba muy estricta a una persona que solicitara licencia y que hubiese estado practicando en esa forma. Una ley de esta clase debe mirar hacia lo porvenir. Y así lo hace en su sección octava, al disponer la celebración de exámenes para personas que se inicien en el ejercicio de su profesión. De acuerdo con dicha sección, el peso recae claramente sobre el peticionario, pero de conformidad con la sección 9, la Legislatura ha hecho recaer el peso de la prueba sobre otros hombros. Que la junta debe tener discreción en ciertos casos es una conclusión clara, y ello aparecería más especialmente de la decisión en el caso de *Mateo* v. *La Junta, post,* p. 594. Evidentemente, había medios de que la junta podía valerse para llegar a la verdad.

Volviendo a los hechos, no podemos convenir con la apelante en que trabajar en una oficina pública como el Departamento del Interior o en el ramo de ingeniería de un municipio no constituya el ejercicio de una profesión públicamente. Trabajar para un gobierno es necesariamente público, y la cuestión a determinar siempre es si por su naturaleza el trabajo realizado es el de un ingeniero.

Tampoco podemos convenir en que el trabajo realizado por el peticionario se limitó al de agrimensor o ingeniero topográfico. Sin embargo, según las definiciones citadas por la misma apelante, la ingeniería topográfica es una rama de la ingeniería civil.

De acuerdo con la estipulación, y según lo resolvió la corte

inferior, la experiencia y la práctica del peticionario quedaron suficientemente establecidas, y *debe confirmarse la sentencia apelada.*