ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ST. JAMES SECURITY SERVICES, LLC.<br><br>Recurrente<br><br>v.<br><br>COMITÉ DE SUBASTAS DE LA AUTORIDAD DE ENERGÍA ELÉCTRICA<br><br>Recurrida | KLRA202200636 | *Revisión Administrativa* procedente de Comité de Subastas De la Autoridad de Energía Eléctrica<br><br>Subasta Núm.: RFP 00003252 (Req. 250393)<br><br>Sobre: Subasta para la Prestación de Servicios de Vigilancia y Protección Generación Norte |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico a 8 de marzo de 2024.

Comparece St. James Security Services, LLC. (St. James, o recurrente), mediante Recurso de Revisión Judicial presentado el 29 de noviembre de 2022 y solicita que revisemos la *Notificación de Adjudicación Enmendada* para la *Subasta RFP 00003252-Servicio de Vigilancia y Protección Generación Norte*, notificada el 9 de noviembre de 2022, por el Comité de Subastas "A" de la Autoridad de Energía Eléctrica (Comité de Subastas "A" de la AEE). Mediante dicho aviso el Comité de Subastas "A" de la AEE, notificó que favoreció a Genesis Security Services, Inc., (Genesis), por ser el postor más bajo que cumple sustancialmente con las especificaciones técnicas. Por los fundamentos que exponemos, confirmamos la determinación recurrida.

**I.**

El 9 de noviembre de 2021, la AEE publicó la invitación a la Subasta RFP 00003252 para proveer servicios de vigilancia y protección en las instanciaciones de generación en el área norte de la isla.[1] Como parte del proceso se realizó, el 16 de noviembre de 2021, una reunión pre-subasta en la cual se requirió la asistencia de los licitadores que deseaban cotizar. A dicha reunión comparecieron: St. James; Bridge Security Services, Inc. (Bridge); Génesis; JOM Security Services, Inc., O'Neill Security and Consultant Services, Inc. y, Airborne Security Services, Inc. Así las cosas, el 1 de diciembre de 2021, se llevó a cabo la Apertura del RFP 00003252, a la que comparecieron las ya mencionadas compañías; tanto JOM Security Services Inc. y Airborne Security Services, Inc. no entregaron cotización.

Las cotizaciones de los licitadores fueron entonces referidas al Comité Técnico Evaluador para su evaluación y recomendación, el cual emitió su informe el 8 de diciembre de 2021. Surge del referido informe que la cotización de St. James fue 15% más alto que el costo estimado por la autoridad, mientras que Bridge y Génesis cotizaron un costo más bajo de lo estimado de 17% y 12% respectivamente.[2] Aun así, recomendó a St. James para la adjudicación de la subasta, pero entendió que las demás compañías cumplieron con el requerimiento de costos y las especificaciones de la subasta.[3]

El 15 de diciembre de 2021, se notificó la adjudicación de la subasta, donde el Comité de Subastas "A" de la AEE determinó dar la buena pro del contrato de vigilancia y protección del área norte a Bridge, por ser el postor más bajo. En la Notificación de

---

[1] Véase página 7 del Apéndice del Recurso de Revisión.
[2] Véase página 22 del Apéndice del Alegato de la AEE.
[3] *Id.,* pág. 25.

Adjudicación se le informó a la parte adversamente afectada sobre su derecho a solicitar reconsideración o apelar la decisión final, conforme la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq*, y del Reglamento de Subastas de la AEE, Reglamento Núm. 8518 de 10 de septiembre de 2014.

Inconforme, el 23 de diciembre de 2021, St. James presentó una *Solicitud de Reconsideración* ante la Secretaría de Procedimientos Adjudicativos de la AEE impugnando la adjudicación de la subasta. En adición a esto, el 4 de enero de 2022, la recurrente también presentó una *Solicitud de Revisión* ante la Junta Revisora de Subastas de la Administración de Servicios Generales (Junta Revisora de la ASG) y alegó que la notificación de adjudicación emitida por el Comité de Subastas de la AEE era defectuosa por no contener advertencia alguna sobre los remedios de revisión que tenía disponible al amparo de la Ley Núm. 73-2019, según enmendada, conocida como Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, 3 LPRA sec. 9831 *et seq*.

Posteriormente, el 23 de febrero de 2022, St. James acudió ante esta Curia mediante *Recurso de Revisión Administrativa*.[4] El 20 de julio de 2022, un panel hermano de este tribunal emitió una *Sentencia* mediante la cual desestimó el recurso por falta de jurisdicción, dado a que en la notificación no se incluyeron las disposiciones requeridas por la Ley Núm. 73-2019, *supra*. Por ello, los términos para acudir al foro apelativo no habían comenzado a transcurrir, haciendo del recurso de Revisión Judicial uno

---

[4] *St. James Security Services, LLC. v. Autoridad de Energía Eléctrica*, KLRA202200113.

prematuro. Ante el revés judicial, la AEE acudió al Tribunal Supremo de Puerto Rico mediante *Petición de Certiorari*.[5]

Mientras el Tribunal Supremo atendía el recurso presentado por la AEE, Bridge solicitó acelerar la terminación del contrato de servicios de vigilancia y protección del área norte.[6] Dado a esta situación, el Comité de Subastas "A" de la AEE determinó solicitar a los demás licitadores de la subasta RFP 00003252 que validen su propuesta, para adjudicar el contrato al mejor postor para que finalice los servicios que inició Bridge.[7] Luego de validadas las ofertas, el Comité de Subastas "A" de la AEE, adjudicó el contrato a Genesis por lo que el 9 de noviembre de 2022 se emitió la *Notificación de Adjudicación Enmendada para la Subasta RFP 00003252*.[8] Esta nueva notificación tampoco incluyó disposición sobre la Ley Núm. 73-2019, 3 LPRA sec. 9831 *et seq*.

Inconforme con la adjudicación de la Subasta a Génesis, St. James compareció nuevamente ante nos y mediante *Recurso de Revisión Administrativa* presentado el 29 de noviembre de 2022 señaló la comisión de los siguientes errores por parte del Comité de Subastas "A" de la AEE:

> Primer error: La notificación de adjudicación Enmendada en la solicitud de propuestas RFP 00003252 de la AEE, es nula y fatalmente defectuosa al incumplir con el mandato del TA en el caso KLRA202200113 y en función de las disposiciones de la Ley 73 del 23 de julio de 2019.

> Segundo error: Erró el comité de subastas al emitir un aviso enmendado de adjudicación de la subasta RFP 00003252 (REQ. 250393) el cual no cumple con los Requisitos de la ley 73 del 23 de julio de 2019.

---

[5] Véase, *St. James v. Security Services, LLC v. Autoridad de Energía Eléctrica*, 2023 TSPR 149, 213 DPR ___.
El 22 de diciembre de 2023, el Tribunal Supremo emitió una Opinión mediante la cual modificó la *Sentencia* emitida por este foro y, en consecuencia, desestimó la *Petición de Certiorari* de la AEE. Esto, debido a que el recurso de revisión ante esta Curia se presentó fuera de los términos provistos en la Ley Núm. 38-2017, *supra*. De manera que, el foro supremo sostuvo la adjudicación realizada el 15 de diciembre de 2021 por la AEE.
[6] Véase página 4 del Apéndice del Recurso de Revisión.
[7] *Id.*
[8] *Id.*

**Tercer error: Erró el comité de subastas al no ordenar la cancelación del contrato de Bridge y matizar su descalificación como una "solicitud para la aceleración de la terminación del contrato".**

**Cuarto error: Erró el comité de subastas al descartar la recomendación del comité técnico evaluador y del usuario del servicio el cual seleccionó la oferta de St. James Security, LLC como la más beneficiosa a la A.E.E.**

Por su parte, la AEE compareció mediante *Alegato de la Autoridad de Energía Eléctrica* el 21 de diciembre de 2022. Con el beneficio de la comparecencia de todas las partes, el recurso quedó perfeccionado y este foro apelativo procedió a resolver la controversia planteada por St. James. El 16 de febrero de 2023, esta Curia desestimó el recurso de revisión por falta de jurisdicción por entender que su presentación fue prematura. Esto es, toda vez que la Notificación en controversia adolecía de mencionar las disposiciones referentes a la Ley Núm. 73-2019, *supra*, los términos para acudir ante este foro revisor a solicitar su revisión no habían comenzado a transcurrir. Por consiguiente, el recurso de revisión judicial de epígrafe resultó prematuro.

Inconforme, la AEE acudió al Tribunal Supremo de Puerto Rico mediante *Petición de Certiorari*. En esencia, reafirmó su postura con respecto a que la notificación estuvo correcta puesto que, al tratarse de servicios profesionales, era innecesario incluir disposiciones refrentes a la Ley Núm. 73-2019 que expresamente excluye de su alcance dichos servicios. Por su parte, St. James sostuvo que la notificación fue deficiente por incumplir con la Ley Núm. 73-2019.

Mediante *Sentencia* del 25 de enero de 2024, el Tribunal Supremo revocó la determinación de este foro. Razonó nuestro más alto foro que la notificación no adolecía de defecto alguno debido a que, no le aplicaban las disposiciones de la Ley Núm. 73-

2019. Citó para ello su reciente opinión en el caso *St. James v. Security Services, LLC v. Autoridad de Energía Eléctrica*, 2023 TSPR 149, 213 DPR \_\_\_, supra. Por ello, nada impedía que este Tribunal asumiera jurisdicción sobre los méritos de la controversia. En consecuencia, se devolvió el caso a este foro intermedio para la continuación de los procedimientos. Así las cosas, solo nos resta dilucidar las controversias concernientes al tercer y cuarto señalamiento de error.

## II.

### A.

El procedimiento de subastas gubernamentales está revestido del más alto interés público. CD Builders v. Mun. Las Piedras, 196 DPR 336, 343-344 (2016). Como la adjudicación de las subastas gubernamentales conlleva el desembolso de fondos del erario, "la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico." Cordero Vélez v. Municipio de Guánica, 170 DPR 237, 245 (2007). Por otro lado, las subastas gubernamentales tienen como eje central proteger los intereses del soberano, procurando conseguir "***los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento***". PR Eco Park et al. v. Municipio de Yauco, 202 DPR 525 (2019); Aluma Const. v. AAA, 182 DPR 776, 783 (2011); Caribbean Communications v. Pol. de PR, 176 DPR 978, 994 (2009); Accumail PR v. Junta Sub. AAA, 170 DPR 831, 827 (2007). (Énfasis nuestro).

La subasta tradicional y el requerimiento de propuestas, RFP, son métodos mediante los cuales el gobierno central y el municipal adquieren bienes y servicios. PR Eco Park et al. v. Municipio de Yauco, *supra*; R&B Power v. ELA, 170 DPR 606, 621 (2007). El método tradicional para regular la adquisición de bienes y servicios es la subasta formal. Por otro lado, la compra negociada y el mecanismo de requerimiento de propuestas o "Request for Proposal" (RFP) son métodos alternos utilizados para la adquisición de bienes y servicios especializados que involucran aspectos altamente técnicos y complejos, o cuando existen escasos competidores cualificados. Maranello et al. v. OAT, 1886 DPR 780 (2012); Caribbean Communications v. Pol. de PR, *supra*, pág. 996; R&B Power v. ELA, *supra*, págs. 621-622.

Al igual que las subastas formales, el Requerimiento de Propuestas es un proceso que se basa en la competencia, pero de una manera más informal y flexible. Caribbean Communications v. Pol. de PR, *supra*, pág. 997; R&B Power v. E.L.A., *supra*, pág. 621. Distinto a la subasta formal, el RFP permite que la compra sea negociada y les brinda oportunidad a los licitadores de revisar y enmendar sus ofertas antes de la adjudicación de la buena pro. Maranello et al. v. OAT, *supra*; R&B Power v. ELA, *supra*, pág. 621.

**B.**

Así como a otras decisiones administrativas, a los procesos de adjudicación de subastas conformes a la Ley Núm. 38-2017, *supra*, también les aplican los mismos principios de deferencia en cuanto al alcance de la revisión judicial. Por ello, las agencias gozan de amplia discreción al evaluar las distintas propuestas sometidas a ella en una subasta. Accumail PR v. Junta Sub. AAA, *supra*, pág. 828. Esto se debe a la reiterada norma jurisprudencial

de que, los procedimientos y las decisiones de las agencias administrativas "están cobijados por una presunción de regularidad y corrección". Caribbean Communications v. Pol. de PR, *supra*, pág. 1006. Cónsono con ello, un tribunal no debe sustituir el criterio de la agencia por el suyo, sino que debe limitar la revisión judicial a determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. Capó Cruz v. Jta. Planificación et al., 204 DPR 581, 592 (2020); Accumail P.R. v. Junta Sub. AAA, *Id.*, pág. 829. Por lo tanto, la deferencia judicial a las decisiones de una agencia administrativas solo cede cuando:

> (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. **Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021) (Citando a Torres Rivera v. Policía de PR, 196 DPR 606, 628 (2016)) (Énfasis en el original).

Esto responde a que, como norma general, la agencia se encuentra en mejor posición que el foro judicial para determinar el mejor licitador debido a su vasta experiencia y especialización. Empresas Toledo v. Junta de Subastas, 168 DPR 771, 779. En ausencia de fraude, mala de o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. Torres Prods. v. Junta Mun. Aguadilla, 169 DPR 886, 898 (2007); Great Am. Indem Co. v. Gobierno de la Capital, 59 DPR 911, 916 (1942).

**C.**

La AEE promulgó el Reglamento de Subastas, Reglamento Núm. 8518, Departamento de Estado, 10 de septiembre de 2014 (Reglamento 518), conforme a los poderes conferidos a este organismo por disposición estatutaria.[9] En el Capítulo III del Reglamento 8518 se detallan los poderes, deberes y responsabilidades de los comités de subastas. En esencia, el Capítulo III, Sección II dispone que los comités de subastas son responsables de la adjudicación de las subastas conforme con las normas, leyes, reglamentos y jurisprudencia vigente. Los comités tienen que realizar las adjudicaciones con el mayor grado de independencia y objetividad debido a que sus determinaciones están revestidas de un alto interés público.

Entre los deberes y poderes de los comités de subastas se encuentra "determinar la adjudicación de las subastas de bienes y servicios, […], en cumplimiento con las normas, leyes, reglamentos y jurisprudencia aplicables". Por otro lado, el Artículo A, de la Sección VII dispone que, al recibir el Expediente de la Subasta, por parte del Supervisor de Compras, el Comité de Subastas correspondiente realiza un análisis para determinar si la pueden evaluar los miembros del Comité o si es necesario el asesoramiento del usuario [Comité Técnico]. De no ser necesaria la intervención del usuario, el expediente pasa directamente a la evaluación de los miembros del comité para la determinación final.

**D.**

Para poder atender los planteamientos que St. James trae ante nuestra consideración, resulta importante discutir brevemente la Sentencia emitida por este Tribunal el 31 de marzo

---

[9] Ley 83 del 2 de mayo de 1941, según enmendada, Ley de la Autoridad de Energía Eléctrica de Puerto Rico, 22 LPRA sec. 191 *et seq*.

de 2022. Se trata del recurso <u>Genesis Security Services, Inc. v. Comité de Subastas "A" de la Autoridad de Energía Eléctrica</u>, KLRA202200038. Los hechos, las partes y la controversia tanto en el precitado recurso y como en el recurso ante nuestra consideración son similares.

En este caso, Génesis acudió ante esta Curia para solicitar la revocación de la adjudicación de la Subasta **Núm. RFP00003253-*Servicios de Vigilancia y Protección Generación Sur***. En apretada síntesis, el Comité de Subastas "A" de la AEE le adjudico a Bridge la buena pro de la subasta para servicios de vigilancia en las instalaciones del ***área sur***. Inconforme con la determinación del Comité de Subastas "A", Génesis acudió ante este foro apelativo y sostuvo como único señalamiento de error que Bridge incumplió con el requisito mínimo de certificar en su propuesta que poseía el Transportation Worker Identification Card (TWIC) vigente previo al comienzo de los servicios.

Un panel hermano de este Tribunal determinó que siendo el TWIC un requisito mínimo detallado en el Pliego de la Subasta RFP00003253, su cumplimiento no era discrecional y su omisión constituía un incumplimiento sustancial con los requisitos del pliego. Por ello, el panel hermano determinó que aun cuando la oferta de Bridge era la más baja, no subsanaba el incumplimiento con uno de los requisitos mínimos establecidos en el pliego de subasta. De manera que, esta Curia revocó la adjudicación de la Subasta RFP00003253-*Servicios de Vigilancia y Protección Generación Sur*.

**III.**

Son dos los errores que quedan por dilucidar en este recurso. En primer lugar, St. James plantea que el Comité de

Subastas "A" incidió al no ordenar la cancelación del contrato con Bridge y al matizar la descalificación de Bridge como una "solicitud para la aceleración de la terminación del contrato". Nos pide la recurrente, además, que tomemos conocimiento del recurso Genesis Security Services, Inc. v. Comité de Subastas "A" de la Autoridad de Energía Eléctrica, *supra*. En segundo lugar, St. James plantea que el Comité de Subastas "A" incidió al descartar la recomendación que hizo el Comité Técnico Evaluador y del Usuario del Servicio de elegir a St. James como el licitador más beneficioso. Luego de evaluar el recurso de epígrafe, a la luz de la totalidad del expediente y la *jurisprudencia aplicable*, resolvemos confirmar la determinación de la cual se recurre. Veamos por qué.

Primeramente, debemos recordar que la cancelación del contrato habido entre Bridge y la AEE surgió a raíz de la solicitud que hizo el propio licitador agraciado. Contrario al planteamiento de St. James, la AEE no descalificó a Bridge. Al contrario, Bridge le solicitó a la AEE que acatara la cláusula de terminación de contrato pactada entre las partes y le liberara de su obligación contractual.[10] Contrario a lo sucedido en el recurso Genesis Security Services, Inc. v. Comité de Subastas "A" de la Autoridad de Energía Eléctrica, *supra*, ninguno de los licitadores

---

[10] La cláusula en cuestión lee de la siguiente manera:

Este contrato estará vigente por un (1) año a partir de la fecha de su otorgamiento. No obstante, lo dispuesto en este Contrato, en cuanto a su vigencia o duración, éste podrá renovarse por tres (3) períodos adicionales de un (1) año cada uno, bajo los mismos términos y condiciones, siempre que la Autoridad notifique por escrito al Contratista su intención de renovarlo dentro de los treinta (30) días anteriores a la expiración de su término original. Además, la Autoridad podrá, en cualquier momento, terminar, cancelar o acelerar su vencimiento, mediante notificación al Contratista, dentro de los treinta (30) días de anticipación, cuando ello, a juicio de la Autoridad, responda a sus mejores intereses. Disponiéndose que, en caso de que el Contratista incumpla con alguna de sus obligaciones en este Contrato, la Autoridad podrá decretar su terminación, cancelación o resolución inmediata, sin necesidad de notificación previa. El ejercicio del derecho de terminar, cancelar o resolver este Contrato, no se entenderá que constituye una renuncia de la Autoridad a cualesquiera remedios adicionales provistos por este Contrato o por la ley para casos de demoro o incumplimiento de las obligaciones contractuales del Contratista.

participantes del RFP00003252, incluyendo a Bridge, fue descalificado. Además, surge claramente de los hechos del precitado recurso que este versa sobre un proceso de subasta separado e independiente al que atendemos en este recurso. Ese recurso atendió un proceso de subasta para el ***área sur***, mientras que este recurso atiende un proceso de subasta en el ***área norte***. No vemos cómo uno se relaciona con el otro.

En el recurso ante nuestra consideración, la AEE acogió la solicitud de Bridge y por ello, se comunicó nuevamente con los licitadores y les solicitó que validaran sus ofertas. Una vez completado ese proceso es que adjudican al segundo mejor postor. Forzoso resulta entonces concluir que la adjudicación de la subasta fue realizada conforme a derecho.

Al hacer una evaluación de la totalidad del proceso de subasta, entendemos que la adjudicación de esta efectuada a Genesis y que el 9 de noviembre de 2022 se emitió la *Notificación de Adjudicación Enmendada para la Subasta RFP 00003252* a todas las partes, fue una correcta que debe ser confirmada.

De otro lado, los comités de subastas tienen a su cargo las adjudicaciones de subastas y, como tal, tienen la experiencia y el conocimiento especializado sobre los servicios que se solicitan. Son los comités de subastas los que están en mejor posición para determinar cuál oferta es la más beneficiosa para la AEE. Así lo establece ratifica el Reglamento 8518, *supra*. El Reglamento 8518 también establece que el asesoramiento del Comité Técnico no es compulsorio y se limita a brindar recomendaciones a los comités de subastas, quienes tienen la última palabra sobre las adjudicaciones de las subastas. En ausencia de fraude, mala fe o abuso de discreción, St. James no tiene derecho a quejarse.

Como podrá apreciarse, somos del criterio que no se cometieron los errores señalados que aquí atendemos. No queda más, sino que conceder que la subasta contra la que aquí se recurre estuvo bien adjudicada en todos sus aspectos.

**IV.**

Por los fundamentos antes expresados, se confirma la determinación del Comité de Subastas "A".

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones