ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| UNIVERSAL CARE CORPORATION<br><br>Recurrente<br><br>v.<br><br>ADMINISTRACIÓN DE SERVICIOS MÉDICOS DE PUERTO RICO (ASEM); JUNTA DE SUBASTAS<br><br>Recurrida | KLRA202400700 | *REVISIÓN* procedente de la Junta de Subastas de la Administración de Servicios Médicos de Puerto Rico<br><br>Subasta Número: D4-03286<br><br>Sobre: Impugnación de Subasta |

Panel integrado por su presidente el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de enero de 2025.

Una agencia gubernamental adjudicó una subasta, dirigida a la compra de cierto equipo médico, a un licitante que no fue el más económico ni el que mayor garantía ofreció. Según se explica a continuación, al no haberse ofrecido una explicación razonable para lo actuado por la agencia, procede dejar sin efecto la determinación recurrida.

I.

En septiembre de 2024, la Administración de Servicios Médicos ("ASEM" o el "Centro"), a través de su División de Compras, emitió una *Invitación a Subasta Informal D4-03286* (la "Subasta") para adquirir carros de documentación para las salas de operaciones del Centro. La Agencia luego hizo disponible el pliego de la Subasta, lo cual incluyó las instrucciones a los licitadores, condiciones, términos y las especificaciones necesarias para presentar una oferta. Los licitadores tendrían hasta el 10 de octubre a las 10:00 am para presentar sus ofertas. En esa fecha, ASEM celebró el Acto de Apertura de la Subasta con la participación de Cardinal Health PR 220, LLC, G-Med Products ("G-Med" o el "Licitador Agraciado"),

System One, Inc., Universal Care ("Universal" o la "Recurrente"), Axiscare Health Logistics, Inc. y Hospital Equipment.

El 13 de noviembre, la ASEM emitió un *Aviso de Adjudicación* (la "Decisión"), mediante la cual adjudicó la buena pro de la Subasta a G-Med, cuya propuesta ascendió a $149,499.00, con tres años de garantía. En síntesis, concluyó que G-Med respondió a las instrucciones, términos, condiciones y requisitos exigidos por la ASEM. En cuanto a los precios de los materiales, sostuvo que eran "razonables" y que su oferta representaba "el mejor valor para la ASEM".

En cuanto a la Recurrente, a pesar de que su oferta era más económica y con más años de garantía (5), determinó que el tiempo de respuesta de la Recurrente, en cuanto a la garantía bajo contratos anteriores, no fue efectivo y que, con ello, incumplió "las necesidades imperiosas de la ASEM y de sus instituciones participantes".[1]

Inconforme, el 25 de noviembre, Universal presentó una *Solicitud de Revisión* ante la Junta Revisora de Subastas de la Administración de Servicios Generales. El término de diez (10) días para que dicha entidad acogiera dicha solicitud transcurrió sin que esta emitiera alguna determinación.

El 26 de diciembre, Universal interpuso el recurso que nos ocupa; formuló el siguiente señalamiento de error:

> Erró la Junta de Subastas al adjudicar la subasta A G-Med, obviando que Unicare [Universal] fue el mejor postor y su oferta representa el mejor valor para la ASEM.

Junto al recurso, Universal presentó una *Moción en Auxilio de Jurisdicción*, la cual este Tribunal declaró con lugar ese mismo día.

La Recurrente arguye que su propuesta, por $130,732.00, fue más económica que la del Licitador Agraciado. Además, señala que ofreció un mayor tiempo de garantía (cinco años), en comparación con los tres años ofrecidos por el Licitador Agraciado.

---

[1] Además de un "No Bid", los licitadores restantes presentaron ofertas más costosas que el Licitador Agraciado.

En cuanto a la experiencia previa de Universal con la Agencia, se consignó que, en el 2021, la Agencia le encomendó suplir "92 carros de la marca Simplifi y 40 carros de la marca InterMetro Lionville" ("InterMetro"). La Recurrente subrayó que, en su propuesta rechazada en este caso, **únicamente incluyó carros de la marca Simplifi**, y aseveró que la Agencia no ha tenido problemas con el servicio de garantía que ha provisto para los carros de esta marca desde 2021. Consignó que, "durante tres (3) años de uso de los 95 carros Simplifi[,] se han generado apenas doce (12) solicitudes de servicio que se atendieron y resolvieron prontamente, todas excepto en 3 ocasiones, en periodos de menos de una semana". Planteó que sí hubo problemas con la garantía de los carros **InterMetro**, <u>no</u> ofrecidos en la propuesta en controversia aquí, ello por razones imputables al fabricante de dichos carros, relacionadas con unos problemas con sus baterías, lo cual causó que dichos carros fueran objeto de un "recall" por el fabricante.

El 21 de enero, la Agencia presentó un alegato en oposición. Arguyó que "el tiempo de respuesta de la parte recurrente en cuanto a reclamos de garantías en compras previas no había sido efectivo". Sostuvo que no tenía pertinencia que el problema con el servicio fuese imputable al fabricante y que "el tiempo de respuesta [de Universal] ante reclamos de garantía respecto al mismo tipo de equipo" fue un "factor determinante" para no adjudicarle la Subasta. Ello "pues el precio más bajo ofrecido en una subasta no constituye el mejor valor … sin una garantía efectiva". Resolvemos.

## II.

Como es sabido, la contratación gubernamental de todo tipo de servicios y materiales está revestida del más alto interés público, toda vez que pretende fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023), citando a *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 794 (2023); *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). Por este motivo, el gobierno utiliza

los procedimientos de subasta y requerimiento de propuestas (RFP) como mecanismos de adquisición de bienes y servicios para proteger el erario y garantizar que se realicen sus funciones administrativas de manera responsable. *Íd.*, citando a *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56, 66 (2008); *Costa Azul v. Comisión*, 170 DPR 847, 854 (2007). Véase, además, *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019).

En cuanto al proceso de RFP, el mismo "se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el [G]obierno y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios". *Íd.*, a las págs. 377-378, citando a *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR a las págs. 531–532. Por su parte, las subastas son procedimientos que lleva a cabo una entidad para que, mediante invitación previa, se presenten ofertas para la realización de obras o adquisición de bienes y servicios. *Perfect Cleaning v. Cardiovascular*, 172 DPR 139, 143 (2007). Una instrumentalidad pública utiliza el mecanismo de las subastas para llevar a cabo sus funciones como comprador de una forma eficiente, honesta y correcta. Así se logran proteger los intereses y el dinero del pueblo a la vez que se asegura la buena administración pública. *Aluma Const. v. A.A.A.*, 182 DPR 776, 782-783 (2011).

De ordinario, las agencias administrativas se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración, de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. *St. James Sec*, 213 DPR a la pág. 378, citando a *CD Builders v. Mun. Las Piedras*, 196 DPR 36, 345 (2016); *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 408 (2009); *A.E.E. v. Maxon*, 163 DPR 434, 444 (2004). Esto se debe a que, en el ejercicio de sus facultades, y por su conocimiento experto, a las agencias "se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general". *CD Builders*, 196

DPR a la pág. 349.  Véase, además, *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 779 (2006).

Consecuentemente, los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad.  *St. James Sec.*, 213 DPR a la pág. 378, citando a *CD Builders*, 196 DPR a la pág. 349; *Aut. Carreteras*, 177 DPR a la pág. 408; *Empresas Toledo v. Junta de Subastas*, 168 DPR a las págs. 783–784.  Ante la ausencia de estos elementos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa.  La cuestión debe decidirse a la luz del interés público". *St. James Sec.*, 213 DPR a las págs. 378-379, citando a *Caribbean Communications v. Pol. De P.R.,* 176 DPR 978, 1006 (2009).  Véanse, además, *Torres Prods. v. Junta Mun. Aguadilla,* 169 DPR 886, 898 (2007); *Great Am. Indem. Co. v. Gobierno de la Capital,* 59 DPR 911, 916 (1942).

### III.

Como cuestión de umbral, aclaramos que surge del récord de forma incontrovertida que tanto la Recurrente como el Licitador Agraciado cumplieron con las especificaciones, términos y requerimientos que exigió la ASEM en el pliego de subasta.  De igual modo, tampoco hay controversia en cuanto a que **la Recurrente fue el postor más bajo, $130,732.00** ($18,767.00 menos que el Licitador agraciado, lo cual representa aproximadamente un 12.5% menos que la cuantía propuesta por G-Med, ascendente a $149,499.00) **y que ofreció más años de garantía**, cinco (5) años, comparados con los tres (3) años de garantía que ofreció G-Med.

Contra dicho marco de referencia, el récord está huérfano de una explicación razonable que justifique la Decisión.  Aunque la Agencia hace referencia a problemas pasados con el servicio de garantía de Universal, la Agencia omite distinguir entre el servicio provisto en cuanto a los carros Simplifi (ofrecidos en la Subasta) y aquél provisto en cuanto a los carros

InterMetro (no ofrecidos en la Subasta). De hecho, en su alegato, la Agencia ignora esta crucial distinción, limitándose a señalar, de forma genérica, que Universal no ha provisto un servicio adecuado en cuanto al mismo "tipo de equipo".

Más aún, la Recurrente plantea, sin que la Agencia haya intentado refutarlo, que, desde el 2021, ha provisto un adecuado servicio de garantía en cuanto a los carros marca Simplifi. Además, señala, sin que la Agencia lo contradiga, que los problemas pasados que hubo con el tiempo de respuesta se limitaron a los carros InterMetro, razón por la cual, precisamente, no se ofrecieron estos en la Subasta.

Así pues, ante el hecho de que la propuesta de Universal es más económica y ofrece más tiempo de garantía, y ante el hecho de que el récord no contiene alegación (ni mucho menos evidencia) alguna de que Universal haya sido deficiente en su servicio de garantía **en cuanto a los carros Simplifi ofrecidos en la Subasta**, no se sostiene lo actuado por ASEM. A la luz de la totalidad del expediente, la Decisión es claramente arbitraria e irrazonable, pues el récord no contiene una justificación razonable para que ASEM se apartase de la norma general de favorecer al licitador más económico.

IV.

Por los fundamentos que anteceden, se deja sin efecto la determinación recurrida y se ordena una nueva adjudicación de la Subasta Núm. D4-03286, de forma compatible con lo aquí resuelto y consignado.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones